# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-IA-01435-SCT

*HEALTH MANAGEMENT ASSOCIATES, INC.,*
*CLARKSDALE HMA PHYSICIAN*
*MANAGEMENT, LLC, CLARKSDALE HMA, LLC*
*INDIVIDUALLY AND d/b/a NORTHWEST*
*MISSISSIPPI MEDICAL CENTER, MARK*
*CATON, REGINA ROBINSON, MATTHEW*
*TORMEY AND TEENA ROWE*

*v.*

*ROGER WEINER, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2017 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| TRIAL COURT ATTORNEYS: | RALPH E. CHAPMAN |
| | DANA J. SWAN |
| | ANDY LOWRY |
| | JAMIE F. JACKS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ANDY LOWRY |
| | THOMAS L. KIRKLAND, JR. |
| | BILL LUCKETT, JR. |
| | JAMIE F. JACKS |
| | GERALD H. JACKS |
| ATTORNEYS FOR APPELLEE: | DANA J. SWAN |
| | H. SCOT SPRAGINS |
| | LAWRENCE J. TUCKER, JR. |
| NATURE OF THE CASE: | CIVIL- TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 03/07/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.    Dr. Roger Weiner brought a malicious-prosecution claim against Health Management

Associates Inc. and Teena Rowe. Dr. Roger Weiner based his malicious-prosecution claim on the federal district court's dismissal of his criminal prosecution. The court had dismissed the case for lack of jurisdiction. Health Management Associates Inc. and Teena Rowe filed a motion for partial summary judgment on the malicious-prosecution claim, arguing that a jurisdictional dismissal is not a favorable termination for the purposes of a malicious-prosecution claim. The trial court agreed. Later, with a new trial judge on the bench, Dr. Weiner sought reconsideration. The trial court reconsidered and reversed the former judge's order. Health Management Associates Inc. and Teena Rowe appealed. The Court reverses and remands the judgment of the trial court, holding that it erred in denying the partial summary-judgment motion.

## STATEMENT OF FACTS

¶2.     Dr. Roger Weiner was prosecuted in federal district court for violating the Mann Act. *See* 18 U.S.C. § 2422(a) (2012). Dr. Weiner sought dismissal of the charges, alleging that the interstate-commerce element was not met. The district court dismissed the charges for lack of federal jurisdiction, stating that "the federal nexus to interstate commerce necessary to create federal jurisdiction simply is not present in the case at bar." The order stated that dismissal was jurisdictional and that "[i]n this case the court is not ruling on whether prostitution was never discussed and would never have been engaged in. If state or local prosecutorial authorities want to pursue a state law prosecution of solicitation of prostitution, that is their prerogative."

2

¶3.    Subsequently, Dr. Weiner brought a civil suit against Health Management Associates Inc. (HMA) and Teena Rowe.[1] The suit alleged a number of claims, including a claim for malicious prosecution.  HMA and Rowe filed a motion for partial summary judgment on the malicious-prosecution claim.  HMA and Rowe argued that the malicious-prosecution claim should be dismissed because a dismissal for lack of jurisdiction of the underlying criminal prosecution did not amount to a "favorable termination" under the elements of a malicious-prosecution claim.

¶4.    The trial judge granted HMA and Rowe's motion for partial summary judgment.  The trial judge then denied Dr. Weiner's motion for reconsideration and certified the order granting partial summary judgment as a final order.

¶5.    Dr. Weiner filed a petition for interlocutory appeal and a direct appeal on the grant of the partial summary-judgment motion.  The Court denied the petition for interlocutory appeal, holding that a Mississippi Rule of Civil Procedure 54(b) certification had been entered.  Subsequently, HMA and Rowe filed a motion to dismiss the direct appeal, arguing that the order had been improperly certified as a final order under Rule 54(b).  The Court granted the motion and dismissed the appeal.

¶6.    Thereafter, the trial judge assigned to the case retired, and a new trial judge was assigned to the case.  Dr. Weiner filed a "Motion to Reconsider the Former Trial Court[']s Granting of HMA Defendants' Motion for Partial Summary Judgment."[2]  Under Rule 54(b)

---

[1]Teena Rowe did not file her own briefs, but she joined and adopted the entire substance of HMA's brief and HMA's reply brief.

[2]Dr. Weiner's second motion for reconsideration was filed in May 2017. The first trial judge had granted HMA and Rowe's motion for partial summary judgment nearly six years

of the Mississippi Rules of Civil Procedure, the new trial judge granted the motion to reconsider and denied HMA and Rowe's partial summary-judgment motion on the issue of malicious prosecution. She stated that the prior federal case was decided in Dr. Weiner's favor because the order of dismissal "went to the substantive elements of the crime of the Mann Act."

¶7. HMA and Rowe filed an interlocutory appeal. A panel of the court granted permission for the appeal.

## STATEMENT OF THE ISSUES

¶8. The parties argue two general issues regarding whether the underlying termination supports a claim for malicious prosecution and whether the grant of the motion to reconsider was proper. The Court considers only one issue, as it is dispositive. The Court restyles the issue as follows:

> Whether the underlying termination of the federal criminal action constitutes a favorable termination for the purposes of a malicious- prosecution claim.

## ANALYSIS

**Whether the underlying termination of the federal criminal action constitutes a favorable termination for the purposes of a malicious-prosecution claim.**

*A. Standard of Review*

¶9. The trial court granted Dr. Weiner's motion to reconsider. The trial court then denied HMA's motion for partial summary judgment on the claim of malicious prosecution.

---

before, in November 2011.

4

¶10.    The grant or denial of a motion for summary judgment is considered de novo. *Bearden v. BellSouth Telecomms., Inc.*, 29 So. 3d 761, 764 (Miss. 2010). Summary judgment is appropriate if the record shows "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56. "In making such a determination, the evidence must be viewed in the light most favorable to the nonmoving party." *Id.*; *Bearden*, 29 So. 3d at 764 (internal quotation omitted). Further, to the extent that questions of law are at issue, the standard of review is de novo. *Barlow v. Miss. State Bd. of Chiropractic Exam'rs*, 233 So. 3d 223, 227 (Miss. 2017).

>    B.    *Whether the underlying dismissal for lack of jurisdiction of the federal criminal action constitutes a favorable termination for the purposes of the malicious-prosecution claim.*

¶11.    Dr. Weiner maintains that the underlying dismissal for lack of jurisdiction of the federal criminal action constitutes a favorable termination for the purposes of the malicious-prosecution claim. HMA and Rowe consider the termination procedural and, therefore, conclude that it does not constitute a favorable termination for the purposes of the malicious-prosecution claim. For the reasons discussed below, the Court agrees with HMA and Rowe.

¶12.    In *Bearden*, in considering an issue of first impression for Mississippi, the Court held that a dismissal of the underlying criminal action for a lack of jurisdiction is not a favorable determination for malicious-prosecution purposes. *Bearden*, 29 So. 3d at 761. Before reaching its holding, the *Bearden* Court reviewed the competing interests in malicious-prosecution cases.

¶13.    First, it considered "[t]he public policy interest in crime prevention [which] insists that private citizens, when aiding law enforcement personnel, ought to be protected against the

5

prejudice that is likely to arise from the termination of the prosecution in favor of the accused." *Id.* at 765 (quoting *Benjamin v. Hooper Elec. Supply Co., Inc.*, 568 So. 2d 1182, 1187-1188 (Miss. 1990)). Second, it considered the interest "which protects individuals from being wrongly accused of criminal behavior which results in unjustified and oppressive litigation of criminal charges." *Id.*

¶14. The *Bearden* Court also specifically stated that the dismissal must "reflect on the merits of a criminal action or the innocence of the accused," noting that "[t]he record is totally void of any indication of why the justice court concluded that it had no jurisdiction." *Bearden*, 29 So. 3d at 764, 766. Further, it held that "the dismissal of the case for lack of jurisdiction does not reflect on the merits of the criminal case against Bearden." *Id.* at 766.

¶15. Dr. Weiner maintains that, although the criminal dismissal here was jurisdictional, *Bearden* is distinguishable. Stating that federal courts are courts of limited jurisdiction, Dr. Weiner concludes that, unlike in state court, if a federal court lacks subject-matter jurisdiction, no federal crime exists. On the other hand, he claims that in state court, if a court lacks jurisdiction, the criminal charge may be brought elsewhere. HMA and Rowe argue that the jurisdictional requirement to federal crimes is merely a jurisdictional hook.

¶16. Dr. Weiner is correct to note the fundamental precept that "federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). Thus, federal criminal laws differ from state criminal laws in that "state crimes do not contain interstate commerce elements because a State does not need such a jurisdictional hook." *Torres v. Lynch*, 136 S. Ct. 1619, 1625, 194 L. Ed. 2d 737

6

(2016). Here, the Mann Act required interstate commerce as a jurisdictional requirement. *See* 18 U.S.C. § 2422(a). The district court dismissed the criminal action against Dr. Weiner, citing a lack of jurisdiction due to the missing element of interstate commerce.

¶17. Although **Bearden** addressed dismissal for lack of jurisdiction, it did so for a state crime, not a federal crime. Here, the question for the Court is also one of first impression: whether the dismissal for lack of jurisdiction *for a federal crime* in federal court is a termination in Dr. Weiner's favor for the purposes of malicious prosecution. The instant issue presents an issue of law, which the Court reviews de novo. *See* **Barlow**, 233 So. 3d at 227.

¶18. The parties cite **Torres**, arguing that it supports their arguments. The issue in **Torres** is notably different than the issue here. The Supreme Court was faced with determining whether a state crime can count as an aggravated felony under the Immigration and Nationality Act when the only difference in the state-law offense and the federal offense is the interstate-commerce element. **Torres**, 136 S. Ct. at 1622. In other words, the issue was whether the jurisdictional element precluded the state crime from being considered an aggravated felony. The Supreme Court determined that the jurisdictional element was immaterial and that a state offense, which otherwise mirrors the federal offense, constituted an aggravated felony under the Act. **Id.** Despite the factual differences in **Torres**, the Court agrees with the parties that **Torres** provides guidance regarding the effect of a jurisdictional element of a federal crime.

¶19. Dr. Weiner points out that **Torres** refers to federal jurisdiction as an element of the crime. Dr. Weiner states that the **Torres** Court noted that both kinds of elements must be

7

proved to a jury beyond a reasonable doubt. *See Torres*, 136 S. Ct. at 1630. Dr. Weiner then interpreted *Torres* to conclude, "If neither is proven beyond a reasonable [doubt], the accused is not guilty!"

¶20.    The *Torres* Court did state that both elements must be proved beyond a reasonable doubt, but it went on to provide that the two types of elements are not the same. It said,

> Both kinds of elements must be proved to a jury beyond a reasonable doubt; and because that is so, both may play a real role in a criminal case. But still, they are not created equal for every purpose. To the contrary, courts have often recognized—including when comparing federal and state offenses—that Congress uses substantive and jurisdictional elements for different reasons and does not expect them to receive identical treatment.

*Torres*, 136 S. Ct. at 1630. The Court then stated that the *mens rea* requirement is *not* needed for a finding under the jurisdictional element. *Id.* at 1630-31. Further, it cited *United States v. Yermian*, 468 U.S. 63, 68, 104 S. Ct. 2936, 2939, 82 L. Ed. 2d 53 (1984) for the point that "[j]urisdictional language need not contain the same culpability requirement as other elements of the offense." *Torres*, 136 S. Ct. at 1631. The *Torres* Court also held that the jurisdictional element is "properly ignored when determining if a state offense counts as an aggravated felony . . . ." *Id.* at 1634. Similarly, for the Mann Act, the *mens rea* requirement for the interstate-commerce element is not required. *United States v. Hattaway*, 740 F.2d 1419, 1428 (7th Cir. 1984) ("The defendant's knowledge of whether a state line has been crossed thus is irrelevant to whether he has violated the Mann Act . . . .").

¶21.    The holdings of *Torres* and *Hattaway* illustrate that the jurisdictional element of a federal crime does not reflect upon culpability. Stated differently, a dismissal for lack of jurisdiction is not a dismissal on the merits of the crime. Thus, *Torres* and *Hattaway* offer

8

guidance that a jurisdictional dismissal—even if it is in federal court—is not a favorable determination for purposes of a malicious-prosecution claim. *See Bearden*, 29 So. 3d at 764 (The dismissal must "reflect on the merits of a criminal action or the innocence of the accused."). However, due to the fact that the instant issue is one of first impression in Mississippi and due to the fact that the parties cite a number of additional cases, the analysis continues.

¶22. Dr. Weiner cites *United States v. Prentiss*, 256 F.3d 971, 982 (10th Cir. 2001), *overruled on other grounds by United States v. Cotton*, 535 U.S. 625, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002), for the point that "[i]f the Government alleged, but failed to prove those elements, we would not say the district court was deprived of subject matter jurisdiction to hear the case; rather we would say Defendant was entitled to acquittal." To understand the rule that can be garnered from *Prentiss*, the Court looks to the facts and issue in *Prentiss* and its guiding authority.

¶23. In *Prentiss*, the issue was whether the government properly had alleged in the indictment the Indian and non-Indian statuses of the defendant and the victim such that federal jurisdiction was triggered. *Id.* at 974-75. Notably, however, a distinction exists between subject-matter jurisdiction to hear the case and the ultimate dismissal due to the lack of a jurisdictional element. *Prentiss*, 256 F.3d at 982. Thus, in concluding that the indictment's failure to allege the jurisdictional element did not affect the court's ability to hear the case, the *Prentiss* Court stated that the defendant would be entitled to an acquittal if the government failed to prove the jurisdictional element. *Id.* at 982–83. While *Prentiss*'s mention of acquittal does seem to reflect upon innocence, it does not sway the Court.

9

¶24. First, the issue of *Prentiss* is distinguishable from the instant issue. *Prentiss* was not specifically determining if the jurisdictional elements reflect on the merits of the crime. Second, *Prentiss*'s acquittal pronouncement does not fit with additional federal law on whether jurisdictional elements reflect on the merits. *See Torres*, 136 S. Ct. at 1631. Third, *Prentiss*'s limited pronouncement makes more sense when considered alongside the case *Prentiss* cited: *United States v. Martin*, 147 F.3d 529 (7th Cir. 1998).

¶25. Like in *Prentiss*, *Martin* noted a distinction between the subject-matter jurisdiction to hear the case and the jurisdictional element. *Martin*, 147 F.3d at 532 ("[The jurisdictional element] is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, i.e., a court's constitutional or statutory power to adjudicate a case, here authorized by 18 U.S.C. § 3231."). Further, *Martin* stated that the interstate-commerce element is "'jurisdictional' only in the shorthand sense that without that nexus, there can be no federal crime . . . ." *Id.* at 531–32 (citing *Kanar v. United States*, 118 F.3d 527, 530 (7th Cir. 1997)); *see also United States v. Sealed Appellant*, 526 F.3d 241, 243 (5th Cir. 2008). *Martin* provided this point in order to conclude the following: "Even if the government fails to establish the connection to interstate commerce, the district court is not deprived of jurisdiction to hear the case." *Martin*, 147 F.3d at 532. Notably, *Martin* was distinguishable from *Prentiss*. The issue in *Martin* was whether a defendant could reopen a guilty plea on the ground that the government had failed to prove the jurisdictional element. *Id.* at 529. However, the pronouncements in both *Prentiss* and *Martin* are focused on determining the same central issue: whether a federal court has jurisdiction to decide a question of jurisdiction.

¶26. Here, no similar central issue exists. The parties do not dispute that the federal district court had subject-matter jurisdiction to rule that the government had failed to meet the interstate-commerce, jurisdictional element. The issue is whether the dismissal due to the lack of the jurisdictional element constitutes a favorable termination for the purposes of a malicious-prosecution claim. Thus, *Prentiss*'s and *Martin*'s pronouncements do nothing to add to or change the need for a determination on the merits.

¶27. In fact, if anything, *Martin* provides guidance that falls along the same lines of the guidance provided by *Torres*. *Martin* stated,

> This court has recognized for decades that, despite defendants' tendency to *confuse facts essential to be alleged as elements of the crime* with *jurisdictional requirements* arising as a matter of law, once a defendant pleads guilty in court which has jurisdiction of the subject matter and of the defendant, as did the court in the instant case, the court's judgment cannot be assailed on grounds that the government has not met its burden of proving so-called jurisdictional facts.

*Id.* at 532 (emphasis added) (internal quotations omitted) (citing *United States v. Hoyland*, 264 F.2d 346, 352–53 (7th Cir. 1959); *La Fever v. United States*, 279 F.2d 833, 834 (7th Cir. 1960)). The above-quoted language in *Martin* illustrates that an inherent difference exists in elements of the crime and the jurisdictional element. Combined with *Torres*'s guidance that "[j]urisdictional language need not contain the same culpability requirement as other elements of the offense," the Court concludes that, although the jurisdictional element is an element of the federal crime, it is not an element that reflects upon the merits. *Torres*, 136 S. Ct. at 1631.

¶28. As stated above, *Bearden* specifically provided that the dismissal must "reflect on the merits of a criminal action or the innocence of the accused" to be considered a favorable

termination. *Bearden*, 29 So. 3d 761 at 764. Further, holding that a dismissal on the jurisdictional element in federal court does not reflect on the merits is consistent with caselaw from around the country. In *Bearden*, the Court looked to *Hatch v. Davis*, 102 P.3d 774, 776 (Utah 2004). Notably, the underlying criminal case in *Hatch* dealt with a dismissal in federal court for a lack of jurisdiction. *Hatch*, 102 P.3d at 776. *Hatch* considered that a jurisdictional dismissal does not reflect on the merits, and it concluded that "a defendant is required to have the underlying action resolved on the merits in his or her favor prior to initiating a claim for wrongful use of civil proceedings." *Id.* at 780-81. More recently than *Martin*, the United States Court of Appeals for the Seventh Circuit has stated,

> Although not "mere surplusage," a jurisdictional element does little more than ensure that the conduct regulated in a federal criminal statute is within the federal government's limited power to proscribe, thereby preventing the federal government from usurping power from the "States [who] possess primary authority for defining and enforcing the criminal law."

*Negrete-Rodriguez v. Mukasey*, 518 F.3d 497, 502 (7th Cir. 2008) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 635, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). *Mukasey* went on to state that "[t]he only purpose of the commerce element . . . is to obtain federal jurisdiction over the crime." *Mukasey*, 518 F.3d at 502.

¶29. Further, the United States Court of Appeals for the Second Circuit has addressed the favorable-termination element of a malicious-prosecution claim in *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997). "Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused . . . *only* when its final disposition is such as to indicate the innocence of the accused." *Murphy*, 118 F.3d at 948 (emphasis added). *Murphy* went on to state, "Certain types of dispositions that do not result from adjudication

12

of the merits have generally been held not sufficiently favorable to the accused to be indicative of innocence. These include dismissals for lack of subject matter jurisdiction." *Id.*; *see also Fish v. Watkins*, 298 F. App'x 594, 597 (9th Cir. 2008) (internal quotation omitted) ("A judgment on the merits is a favorable termination, while a procedural or technical dismissal is not.")

¶30.    Turning to the instant case, the trial court pointed out that the federal district court's order "went to the substantive elements of the crime of the Mann Act." While true that the order did entertain substantive elements of the Mann Act, the entertainment constituted mere dicta; the holding addressed only jurisdiction. The federal district court held, "For the foregoing reasons, the court finds that the defendant's motion to dismiss for lack of federal jurisdiction should be and the same is hereby GRANTED." Specifically, the order also stated that "the government is confusing the elements required to prove the [elements] of an 'attempted crime' with the subject matter jurisdictional requirements for the court initially to acquire jurisdiction even to hear the case.'" Finally, the order provided that a state-court action could be brought, albeit without the federal jurisdictional requirement.

¶31.    Under a de novo review of the issues of law and summary judgment—specifically considering *Bearden* and additional applicable caselaw—the Court holds that the instant jurisdictional dismissal does not reflect on the merits of the crime. In order to constitute a favorable termination for the purposes of a malicious-prosecution case, the dismissal must reflect on the merits of the crime. *Bearden*, 29 So. 3d 761 at 764. Thus, the trial court should not have denied the motion for partial summary judgment.

13

C. *Whether the government abandoned its prosecution of Dr. Weiner, creating a favorable termination for the purposes of the malicious-prosecution claim.*

¶32. Citing Mississippi caselaw, Dr. Weiner makes an alternative argument that a favorable termination occurred when the government abandoned its prosecution by not appealing the federal district court's dismissal. The Court considers the instant issue de novo because it presents an issue of law about whether a failure to take an appeal on a jurisdictional dismissal amounts to an abandonment under Mississippi caselaw. *See Barlow*, 233 So. 3d at 227.

¶33. In *Joiner Insurance Agency, Inc. v. Principal Casualty Insurance Co.*, 684 So. 2d 1242 (Miss. 1996), the Court considered abandonment for the purposes of satisfying the termination element of a malicious prosecution. Specifically, the Court stated that "if the facts or circumstances underlying the dismissal without prejudice demonstrated that the claim was abandoned because the plaintiff *could not prevail on the merits*, then the dismissal was a final termination" for malicious-prosecution purposes. *Joiner Ins.*, 684 So. 2d at 1245 (emphasis added).

¶34. As analyzed above, a dismissal for lack of jurisdiction, even in federal court, does not amount to a dismissal on the merits. *Joiner Insurance* shows that abandonment in Mississippi (while not requiring dismissal with prejudice) requires the facts and circumstances of the dismissal to illustrate a failure to prevail on the merits. *See Joiner Ins.*, 684 So. 2d at 1245. Therefore, *Joiner Insurance* does not support Dr. Weiner's argument.

¶35. Dr. Weiner also cites *Lochridge v. Pioneer Health Services of Monroe County, Inc.*, 86 So. 3d 942 (Miss. Ct. App. 2012). In considering whether the malicious-prosecution case had accrued, the *Lochridge* Court determined that in order to accrue, the termination element

14

of a malicious-prosecution claim does *not* require "an appealable judgment or dismissal with prejudice." ***Lochridge***, 86 So. 3d at 946 (citing ***Joiner Ins.***, 684 So. 2d at 1244). The ***Lochridge*** Court looked to the facts of the case to determine that abandonment had occurred. Specifically, in ***Lochridge***, Pioneer Health Services submitted a letter to the district attorney stating that it did "not wish to pursue criminal charges against Linda Lochridge at this time." ***Lochridge***, 86 So. 3d at 946.

¶36.    In ***Lochridge***, specific proof of abandonment was provided. Aside from arguing that the government failed to take an appeal, Dr. Weiner provides no such factually similar information. Further, ***Lochridge*** does not address whether the failure to appeal amounts to an abandonment, and most importantly, ***Lochridge*** does not change the rule that the dismissal must reflect the merits. *See* ***Joiner Ins.***, 684 So. 2d at 1245. Thus, ***Lochridge*** is distinguishable from the instant case and does not provide support for Dr. Weiner's argument.

¶37.    Dr. Weiner also cites ***Hyer v. Caruso***, 102 So. 3d 1232 (Miss. Ct. App. 2012). In ***Hyer***, the charges against Caruso "were remanded to the file." ***Id.*** at 1236. Once again, Dr. Weiner presents no such factually similar situation to garner guidance or support from ***Hyer***.

¶38.    In sum, when a dismissal does address the merits, a failure of the government to appeal does not amount to an abandonment. Therefore, the instant issue does not bar summary judgment.

## CONCLUSION

¶39.    Under a de novo review, the trial court erred in denying the partial summary-judgment motion.  The Court reverses the judgment and remands the case with instructions for the trial court to enter an order granting partial summary judgment in favor of HMA and Rowe.

¶40.    **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.    COLEMAN AND MAXWELL, JJ., NOT PARTICIPATING.**